# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TRACY LAMONTE SKINNER,

    Plaintiff,

v.

SARAH PINARDI, LCPC, *et al.*,

    Defendants.

Civil Action No.: JKB-24-2204

## MEMORANDUM OPINION

Defendants Sarah Pinardi, Licensed Clinical Professional Counselor ("LCPC"); Misty Guthrie, Licensed Clinical Social Worker – Certified ("LCSW-C"); Correctional Officer Brandon Self; and Correctional Sergeant Allan Graham move to dismiss plaintiff Tracy Lamonte Skinner's Complaint or, alternatively, for summary judgment to be granted in their favor. (ECF No. 8.) Skinner was informed of his right to file an opposition response to Defendants' Motion pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and he filed an opposition response to which Defendants replied. (ECF Nos. 9, 13, and 15.) No hearing is necessary to resolve the pending motion. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated below, the Defendants' motion, construed as a motion to dismiss, will be granted in part and denied in part.

### I. Background

#### A. Skinner's Complaint

At all times relevant to the Complaint, Skinner was incarcerated at North Branch Correctional Institution ("NCBI") and housed in the Special Needs Unit ("SNU"). (ECF No. 1 at 4.) As Skinner alleges, "[t]he SNU is a program for prisoners with severe mental illness [] who require mental health intervention to function in their daily lives." (*Id.*) The Complaint alleges

Defendants violated Skinner's constitutional rights when they coerced him and "implied the use of the threat of force" to cause him to take antipsychotic drugs against his will. (*Id.* at 9.) Skinner explains that on August 24, 2022, he decided not to take his medication. (*Id.* at 6.) At 7:00 a.m., Defendant Self visited Skinner's cell and asked him about his medication. (*Id.*) Plaintiff advised Self that he "did not get up to take his medication from the nurse that morning." (*Id.*) Self left the cell, and then returned shortly with defendant Pinardi who "inquired if the Plaintiff's medication – Geodon – came in that morning, and the Plaintiff said that he did not know because he did not get up to get his medication that morning." (*Id.*) Upon asking why he did not take his medication, Skinner replied that "he did not approach his slot to avoid a verbal confrontation with an officer who harassed Plaintiff verbally at the 2:00 a.m. count." (*Id.*) Pinardi asked Skinner several more questions, including whether he wanted to hurt himself or anyone else, to which he stated "no" and "I am fine and I don't need to talk to no one." (*Id.* at 6–7.) When Pinardi asked for the second time why Skinner did not take his medication, he refused to continue answering questions. (*Id.* at 7.)

Later, other inmates were being released from their cells to go to their work duties, but Skinner was not released. (ECF No. 1 at 7.) Skinner called for Self and banged on his cell in order to get his attention. (*Id.*) Self responded to Skinner's cell and advised him that he was locked down "for refusing to take anti-psychotic drugs from the nurse," and left. (*Id.*) Plaintiff then continued banging on the door and calling to speak to Self again as well as Pinardi in order to "sign out of the SNU program." (*Id.*)

Defendant Self returned to Skinner's cell along with Guthrie, who would not allow Skinner to sign out of the SNU program. (ECF No. 1 at 8.) Skinner told Defendants: "'this is the same thing that was done to me the last time I was in the SNU program, lock downs as arbitrary

2

punishments for exercising my rights." (*Id.*) Skinner repeatedly asked for the door to be opened, insisting that he "'did nothing to no one,'" and Guthrie repeatedly refused to open the door or provide Plaintiff a form to sign out of the SNU. (*Id.*) Skinner explained that he asked who was responsible for locking him down, and Guthrie responded that "it is a collective decision by a group of people to keep everyone around [Skinner] safe." (*Id.*) Skinner alleges that he "had done nothing dangerous." (*Id.*)

Later, Officer Justin Broadwater approached Skinner's cell and asked him what was going on. (ECF No. 1 at 8.) Broadwater suggested that Skinner come out to discuss the matter with Sgt. Graham, so Skinner exited his cell after being handcuffed and was escorted to a "strip cage in a secluded area in the back of the unit" where he had "the same conversation with Sgt. Graham." (*Id.*) At that point, Skinner learned that several people, including Graham, Self, Pinardi, Guthrie, Warden Jeff Nines, Assistant Warden Keith Arnold, and Security Chief Ryan Stottler, made the "collective decision" "to lock him down, then move him to [a] secluded area surrounded by officers under the implied threat of the use of force . . . causing Plaintiff - GREAT DURESS - [to] unwillingly take the dose of anti-psychotic drugs that he had refused earlier that morning." (*Id.* at 9.)

Plaintiff alleges that Defendants violated his due process, equal protection, and first amendment rights as well as his rights under Article 24 of the Maryland Constitution. )ECF No. 1 at 5.) He seeks compensatory and punitive damages. (*Id.*)

### B. Defendants' Response

Defendants filed a motion seeking dismissal of the Complaint or, in the alternative, summary judgment in their favor together with a Memorandum in Support and the Declaration of Joyce A. Miller, Director of Insurance for the State Treasurers Office – Insurance Division. (ECF

3

Nos. 8, 8-1, 8-3.) Defendants argue that Plaintiff (1) fails to state an equal protection claim under the Fourteenth Amendment, or "in the alternative, the plaintiff has failed to establish an essential element of his claim"; (2) fails to state a due process claim under the Fourteenth Amendment; (3) fails to state a claim for retaliation under the First Amendment; (4) fails to state a claim under the Eighth Amendment; and (6) defendants are entitled to qualified immunity.[1] (ECF No. 8.)

## II.   Standard of Review

The Defendants' motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF No. 8-1. Motions styled in this manner implicate a court's discretion under Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). However, while Defendants' Motion is styled as a motion to dismiss, or in the alternative for summary judgment, Defendants present no evidence in support of their purported alternative motion for summary judgment.[2] As such, the Motion will be construed as a Rule 12(b)(6) motion to dismiss.[3]

In reviewing the Motion to Dismiss, the Court accepts the well-pleaded allegations as true and in the light most favorable to the Skinner. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of

---

[1]   Additionally, Defendants argue that Skinner fails to state any state law claims, has not complied with the statutory requirements for filing a state claim, and that they are entitled to governmental immunity from state constitutional claims. (ECF No. 8 at 2.)

[2]   The Declaration of Joyce Miller, Director of Insurance for the State Treasurer's Office – Insurance Division, (ECF No. 8-3), is not relevant to Skinner's federal claims.

[3]   In their reply to Plaintiff's opposition response, Defendants included the Declaration of John C. White, Correctional Case Management Specialist II at NBCI, who provides additional information regarding Skinner's mental health, placement in the SNU, criminal history, and disciplinary history. (ECF Nos. 15-1 through 15-4.) As the Motion is being construed as one to dismiss under Rule 12(b)(6), these documents will not be considered.

4

wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

The Court is mindful, however, that Skinner is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. Discussion

"[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). Skinner has a significant liberty interest in avoiding unwanted medication under the Due Process Clause of the Fourteenth Amendment. *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. The "inmate's liberty interest in avoiding the forced administration of antipsychotic drugs" must be balanced with "the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others," but "[t]he Due Process Clause does require certain essential procedural protections." *Id.* at 236. To determine whether the essential procedural protections are adequate, courts should apply the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), including whether there is a "'valid, rational connection between the prison regulation and the legitimate governmental

interest,'" "'the impact accommodation of the asserted constitutional right will have on guards and other inmates,'" and "'the absence of ready alternatives.'" *Id.* at 224–25 (quoting *Turner*, 482 U.S. at 89-90).

In his verified Complaint, Skinner alleges that Defendants violated his constitutional rights by "locking [him] down arbitrarily as a punishment [and] using coercion, intimidation, and the implied use of force to constructively force [him] to ingest antipsychotic drugs while [he] was no danger to himself, other prisoners, prison staff, or the security of the institution." (ECF No. 1 at 5.) Specifically, he was locked in his cell, marched past numerous officers lining the hallways when he was escorted out, and then locked in a "strip cage" until he took his medication. (*Id.* at 6–9.) He alleges that he repeatedly asked to "sign out of the SNU program," stating that "this is the same thing that was done to me the last time I was in the SNU program, lockdowns as arbitrary punishments for exercising my rights." (*Id.* at 7–8.) He alleges that he took the medication only after learning that "the collective decision to lock him down, then move him to secluded area surrounded by officers under the implied threat of the use of force was the Warden, Assistant Warden, Security Chief, a correctional sergeant, an officer ranked CO II, a person from the psychology department, and a social worker," and that he did so "unwilling" and under "GREAT DURESS." (*Id.* at 9.)

In support of their Motion to Dismiss, or in the Alternative, for Summary Judgment, Defendants conflate dismissal under Rule 12(b)(6) with summary judgment under Rule 56 by making the same arguments in support of both, notwithstanding their different standards and purposes. (ECF Nos. 8, 8-1.) In doing so, Defendants make arguments seemingly couched in terms of summary judgment, but which are merely speculative and unsupported by evidence. Defendants do not include their declarations or other evidence to support the context in which they

characterize the events described in the Complaint.[4] Therefore, the appropriate construction of the Motion is as one for dismissal under Rule 12(b)(6).

Liberally construed, Skinner's Complaint alleges that he was forced to take antipsychotic medication involuntarily and without due process. While it is true that Skinner does not allege that his "jaws were [] pried open to administer his Geodon pill," to use Defendants' disturbing image (ECF No. 8-1 at 10), he clearly alleges that he was kept in lock down under threat of force unless and until he took the medication and that he took the medicine only when it became clear to him that he would be physically forced to do so. Per counsel, Defendants apparently agree that Skinner had no choice but to take the medication: "[Skinner's] refusal of medication and the reasons for the refusal could be remedied one of two ways: either he took his medication voluntarily, or forcible administration was subject to consideration." (ECF No. 8-1 at 16.) As pleaded, Skinner did not have the option to choose not to take the medication. Therefore, he sufficiently alleges that his due process rights were violated, and the Motion to dismiss his due process claims will be denied.

Skinner also alleges that his rights were violated under the equal protection clause of the Fourteenth Amendment. (ECF No. 1 at 5.) The Equal Protection Clause generally requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show that his or her equal protection rights were violated, a plaintiff must demonstrate that he or she was treated differently than similarly situated inmates and the

---

[4] For example, Defendants state that "Skinner was not held down or administered injections against his will. His jaws were not pried open to administer his Geodon pill. He was not compelled to receive a new or perhaps stronger dose of antipsychotic medication, whose side effects on his body were yet unknown. While Geodon is a psychoactive medication, designed to treat the plaintiff's SMI, its effects upon Mr. Skinner were by then well-known. It was his daily medication." (ECF No. 8-1 at 10.) They explain that all Defendants "knew [Plaintiff] from the SNU tier," and Pinardi questioned Plaintiff "in an effort to understand the plaintiff's motivations." (*Id.* at 11.) They further explain that "[t]he lockdown period presumably gave the defendants some time to conference the issue with the NBCI Warden, Assistant Warden and Security Chief." (*Id.*; *id.* at n. 7.)

7

discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 Fed. App'x. 609, 611 (3d Cir. 2009) (citing *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985)). If the discrimination was based on a plaintiff's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest; otherwise, the plaintiff must show that the discrimination did not bear a rational relationship to a legitimate government purpose. *See Cleburne*, 473 U.S. at 440-42. Skinner has not alleged that he has been treated differently than similarly situated inmates. The Motion will therefore be granted as to that claim as well as the analogous state law claim.

Next, Skinner alleges that Defendants retaliated against him in violation of his First Amendment rights. (ECF No. 1 at 5.) To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Defendants argue that Skinner was "not punished in any way for speaking openly about his refusal," noting that Skinner does not allege that he "was given a disciplinary infraction for refusing his medication, kicking his door, or attempting to resign from the SNU program." (ECF No. 8-1 at 18 and n.9.) This does not comport with the allegations in the Complaint, which allege that Skinner was placed in lockdown solely because he declined to take his medication. Such action constitutes an adverse effect that was directly caused by Skinner's voicing his concerns about taking his medication. Defendants could have, but did not, argue that the refusal does not constitute protected speech. The Motion is denied as to Plaintiff's retaliation claims.

Finally, Skinner's Complaint can be construed to allege a violation of his Eighth Amendment rights based on unconstitutional conditions of confinement. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury.

9

> The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment.

*Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *D'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires an allegation of "a serious or significant physical or emotional injury resulting from the challenged conditions, *Strickler*, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta*, 330 F.3d at 634, citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993), *see also Odom v. So. Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003).

Skinner alleges that he was confined to his cell and placed in a cage because he declined to take his medication. (ECF No. 1 at 6–9.) He states that he attempted to "sign out" of the SNU because of repeated violations of his rights but was rebuffed. (*Id.* at 7–8.) Liberally construed, Skinner alleges that he is being forced to remain in a voluntary program wherein he is repeatedly and arbitrarily placed in lock down for declining to take medication and other assertions of his rights. In response, Defendants argue that "it is clear from the actions of the defendants that they believed that Mr. Skinner's refusal of medication was a significant risk to his health and safety." (ECF No. 8-1 at 20.) What is clear is that Defendants very much wanted Skinner to take his medication. However, their motivation for taking such extreme measures in response to Skinner's refusal is not at all clear based on the allegations in the Complaint. Taken as true, and particularly considering Skinner's allegation that lockdowns for failure to take medication or other assertions

of rights is not unusual in the SNU program, Skinner sufficiently alleges that he was subjected to unconstitutional conditions of confinement and that Defendants, being the direct cause of those conditions, were deliberately indifferent to those conditions. Defendants Motion will be denied as to Skinner's Eighth Amendment conditions of confinement claim.

## IV.  Qualified Immunity

Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome a claim of qualified immunity from a § 1983 claim, there must be a showing that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citations omitted).

"Ordinarily, the question of qualified immunity should be decided at the summary judgment stage." *Willingham v. Crooke*, 412 F.3d 553, 558–59 (4th Cir. 2005). However, "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (2014) (quoting *Field Day, LLC v. Cnty. Of Suffolk*, 463 F.3d 167, 191-

92 (2d Cir. 2006)). This is because dismissal under Rule 12(b)(6) is "appropriate only if a plaintiff fails to state a claim that is *plausible* on its face." *Id.* (citing *Iqbal*, 556 U.S. at 678).

Defendants assert that they are entitled to qualified immunity because Skinner has not established any violation of his constitutional rights and because "[t]here is no case law or statute holding or stating that the actions of any of the defendants as described in the complaint violated Mr. Skinner's constitutional rights." (ECF No. 8-1 at 22–23.) As outlined above, Skinner has plausibly alleged that his clearly established constitutional rights were violated. Therefore, any determination of qualified immunity would be premature at this juncture. Defendants may reassert the defense at subsequent stages of the proceedings.

## V.  Conclusion

For the foregoing reasons, the Defendants' Motion, construed as a motion to dismiss, will be granted in part and denied in part. The Motion is granted as to Skinner's equal protection claims, which will be dismissed. The Motion is otherwise denied. Defendants shall be required to file an answer or a renewed dispositive motion in response to Skinner's Complaint as to his due process, retaliation, and conditions of confinement claims.

A separate order follows.

Dated this 4 day of September, 2025.

FOR THE COURT:

_____
James K. Bredar
United States District Judge

12